UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN A. PAYNE | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:09-CV-107-RM |
| | ) | (Arising from 3:06-CR-115AS) |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

OPINION AND ORDER

John Payne plead guilty to a charge of enticement of a minor under 18 U.S.C. § 2422(b) and was sentenced to ten years' imprisonment. Mr. Payne now asks the court to vacate his sentence in accordance with 28 U.S.C. § 2255. He raises three arguments: (1) that his conviction constitutes an improper construction of a federal criminal statute in light of the ruling in United States v. Gladish, 536 F.3d 646 (7th Cir. 2008); (2) that his counsel was ineffective for not filing an appeal when instructed to do so by Mr. Payne; and (3) that 18 U.S.C. § 2422(b) violates the Commerce Clause because it criminalizes purely intrastate conduct. For the reasons that follow, the court DENIES Mr. Payne's petition.

*Timeliness*

The one-year limitations period applicable to § 2255 petitions bars Mr. Payne's petition. The one-year limitations period runs from the latest of four events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the

> United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Unless Mr. Payne can show that subsection (f)(2), (3) or (4) applies, the latest date he could have filed his petition was June 18, 2008 because his judgment was entered on June 8, 2007 and the ten-day period for filing an appeal expired on June 18, 2007. *See* United States v. Olson, 2006 WL 1494108, at *1 (S.D. Ind. 2006) (noting that the conviction becomes final the last day on which the defendant could have appealed); Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005) (unappealed criminal judgment becomes final for purpose of calculating the limit for filing collateral attack when time for filing a direct appeal expired — 10 business days after entry of judgment) (*citing* FED. R. APP. P. 4(b) and 26(a)(2)). Although Mr. Payne filed his petition on March 13, 2009, well past the one-year limitations period,[1] he contends that certain grounds raised in his § 2255 petition didn't become known and couldn't have become known until the court of appeals issued its decision in United States v. Gladish, 536 F.3d 646 (7th Cir.

---

[1] Mr. Payne also filed a letter with the court dated October 6, 2008 raising similiar issues that were brought forth in his § 2255 petition, but this too was outside the one-year limitations period.

July 31, 2008). As explained in more detail later, the Gladish court held that explicit sexual talk doesn't, by itself, amount to the kind of "substantial step" needed to prove an attempt to violate 18 U.S.C. § 2422(b), which forbids knowingly persuading, inducing, enticing, or coercing a person under the age of 18 to engage in criminal sexual activity. Mr. Payne contends that Gladish is indistinguishable from his case and that he didn't take any substantial steps toward completion of the crime and so isn't guilty of the offense.

Because Mr. Payne doesn't contend that governmental action impeded filing his petition, § 2255(f)(2) doesn't apply. Further, § 2255(f)(3) only applies to Supreme Court decisions, so the court of appeals' Gladish decision doesn't trigger that subsection. Section 2255(f)(4) applies when a defendant discovers facts supporting his claim that couldn't have been discovered earlier through the exercise of due diligence. Mr. Payne argues that his time limitation should run from the date he could have discovered the Gladish decision through due diligence. This argument requires the court to determine whether a court of appeals' decision interpreting the statute under which a defendant is convicted can ever extend the one-year deadline under § 2255(f)(4). Stated differently, Mr. Payne only falls within the one-year time limitation if the Gladish opinion constitutes a newly discovered "fact."

The Supreme Court in Johnson v. United States, 544 U.S. 295 (2005), concluded that the post-sentencing vacatur of a state conviction that affected the defendant's federal sentence is a new "fact" that opens a one-year window to seek

3

collateral relief under § 2255(f)(4). The Court reasoned: "[w]e commonly speak of the 'fact of a prior conviction, and an order vacating a predicate conviction is spoken of as a fact just as sensibly as the order entering it.'" Id. at 306-307 (internal citation and quotations omitted). In any event, "a claim of such a fact is subject to proof or disproof like any other factual issue." Id.

The court of appeals has declined to expand the ruling in Johnson v. United States "to encompass every substantive change in the law." Seals v. United States, No. 8-CV-80, 2009 WL 1108482, at *2 (S.D. Ill. April 24, 2009) (*citing* Lo v. Endicott, 506 F.3d 572, 575 (7th Cir. 2007)). The Lo v. Endicott court found that under § 2244(d)(1)(C), a parallel limitations provision to § 2255(f)(4),[2] state court rulings that modify the substantive law don't constitute a "factual predicate." Id. at 576. In Lo v. Endicott, although the petitioner argued that the Wisconsin Supreme Court's clarification of law on self-defense invalidated a jury instruction given in petitioner's case, the court found that this change in the law didn't constitute a "factual predicate" within the meaning of the statute. Id. at 575. The court reasoned that unlike the state court vacatur in Johnson v. United States, the Wisconsin Supreme Court case wasn't a fact within the petitioner's own litigation history that changed his legal status. Id. The court found that while "the Wisconsin Supreme Court's decision could arguably help [petitioner's] claim, . .

---

[2] Section 2244(d)(1)(C) is the almost identical counterpart to Section 2255(f)(4) and "the Supreme Court has interpreted the statute of limitations provisions of [both sections] in concert with one another." Lo v. Endicott, 506 F.3d at 575, n. 2 (citations omitted).

4

. that does not make the decision a fact subject to proof or disproof." Id. The court in Lo v. Endicott explained:

> [A]dopting [petitioner's] argument would render the limitations in [§ 2225(f)(3)] meaningless. Section [2225(f)(3)], the primary vehicle through which court decisions restart the limitations period, provides that the decision must involve a constitutional right recognized by the Supreme Court, and that the Court must make the right retroactively applicable to cases on collateral review. To suggest, as [petitioner] does, that any decision by any court on any issue could constitute a "factual predicate" would swallow up the specifically delineated limitations in [§ 2225(f)(3)].

Id. at 575-576; *see also* Seals v. United States, 2009 WL 1108482, at *2 (holding that an amendment to the sentencing guidelines could not be considered a fact "subject to proof or disproof" under the statute, but rather, was a substantive legal change).

The Eighth Circuit in E.J.R.E. v. United States, 453 F.3d 1094 (8th Cir. 2006), addressed a situation similar to this case. E.J.R.E. involved application of a 2002 amendment to 18 U.S.C. § 5037(a) that vested "federal district courts with the express statutory authority to impose a juvenile sentence that includes a period of detention followed by a term of juvenile delinquent supervision." Id. at 1096. The petitioner was adjudicated delinquent and sentenced to detention followed by a term of juvenile delinquent supervision for conduct that occurred before 2002. Id. In a 2004 opinion, the Eight Circuit held that the amendment couldn't be applied to acts of delinquency committed before November 2, 2002. Id. The petitioner filed a § 2255 petition based on the 2004 opinion and argued that it was timely pursuant to § 2255(f)(4). Id. at 1096-1097. The court found that

there was no operative fact to invalidate and that the court of appeals' decision, "unlike a predicate conviction, is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved." Id. at 1098 (citation omitted). The court reasoned that § 2255(f)(3) "further supports the conclusion that a decision taken from a federal court of appeals does not provide an independent basis to trigger the one-year statute of limitations provided under § 2255." Id. at 1098.

Unlike the petitioner in Johnson v. United States, Mr. Payne hasn't asked the court to consider developments in his personal judicial process that alter his legal status. The development brought about by United States v. Gladish is like the substantive changes in law discussed in Lo v. Endicott, Seals v. United States, and E.J.R.E. v. United States, and as such, are not considered facts for purposes of extending the one-year limitations period for filing § 2255 petitions.

Because the Gladish decision isn't a newly discovered "fact", the one-year limitation period began running on June 18, 2007 and expired on June 18, 2008. 28 U.S.C. § 2255(f)(1). Mr. Payne's petition is untimely.

*Waiver*

Even if Mr. Payne had brought his motion within the one-year time limitation, he expressly waived his right to contest his conviction and sentence. Mr. Payne's plea agreement, signed by Mr. Payne, his attorney Phillip Skodinski, and Assistant United States Attorney Lesley Miller Lowery, contains the following

6

language in paragraph 9(f):

> I expressly waive my right to appeal or to contest my conviction and my sentence . . . or the manner in which my conviction or my sentence . . . was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal . . . or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255[.]

(Plea Agreement, ¶ 9(f)). Mr. Payne further declared that he offered his "plea of guilty freely and voluntarily and of [his] own accord." (Plea Agreement, ¶ 12). During Mr. Payne's plea hearing, the court asked Mr. Payne to read paragraph 9(f) and then explained:

> "Waiver" means you're giving up something. Here, you're giving up two things. One, you're giving up the right to appeal; and, two, you're giving up the right to file what's known as post-conviction proceedings. I want to be sure that you understand that. Do you?

(Plea Hrg. Tr., p. 7). Mr. Payne responded that he understood. (Plea Hrg. Tr., p. 7). Despite the waivers and admissions in his plea agreement, Mr. Payne now asks that his sentence be vacated, set aside, or corrected pursuant to 28 U.S.C. § 2255.

Mr. Payne knowingly and intentionally waived his right to seek post-conviction relief on any ground unless the claimed ineffective assistance of counsel relates directly to the waiver or its negotiation. The "right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999). "[A] waiver is enforceable only if it is knowing and voluntary and if the defendant cannot establish a claim of ineffective

7

assistance of counsel in connection with negotiating the agreement." Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000). An enforceable waiver bars ineffective assistance claims relating to anything other than the plea negotiation. *See* Bridgeman v. United States, 229 F.3d 589, 593 (7th Cir. 2000); *see also* Jones v. United States, 167 F.3d at 1145.

Mr. Payne hasn't alleged that his counsel was ineffective in the negotiation of the plea agreement or the waiver. Indeed, during the plea hearing, Mr. Payne acknowledged that his counsel had been effective in working out the plea agreement. (Plea Hrg. Tr., p. 9). Mr. Payne further testified that he wasn't intimidated, coerced or threatened into pleading guilty. (Plea Hrg. Tr., pp. 3 and 9-10). The broad language of the waiver precludes Mr. Payne from seeking post conviction relief even in light of a subsequent decision that may favor Mr. Payne. *See* United States v. Lockwood, 416 F.3d 604, 608 (7th Cir. 2005) (finding that the change in law announced by United States v. Booker didn't undermine the validity of defendant's waiver of right to appeal sentence). The Lockwood court stated that "[t]he fact that Lockwood, the government, and the district court failed to anticipate Booker or its sweeping effect on federal guidelines sentencing does not change this conclusion." 416 F.3d at 607 (citation omitted). The court of appeals has "consistently rejected arguments that an appeal waiver is invalid because the defendant did not anticipate subsequent legal developments." United States v. McGraw, 2009 WL 1885464, at *6 (7th Cir. July 2, 2009) (finding that the petitioner "relinquished his right to challenge his sentence based on intervening

8

Supreme Court decisions.").

Upon review of Mr. Payne's plea agreement and the transcript of his change of plea hearing, the court finds that Mr. Payne voluntarily waived his right to appeal and to contest his sentence. His petition now before the court does exactly what he promised not to do. Mr. Payne hasn't alleged ineffective assistance of counsel with respect to the negotiation of his plea or asserted that it was involuntary; he has therefore waived his right to argue that the holding in Gladish requires reversal of his conviction.

Mr. Payne also contends that his counsel was ineffective because he didn't file a notice of appeal after Mr. Payne instructed him to do so. Even if Mr. Payne told his counsel to file an appeal, the Sixth Amendment doesn't require defense counsel to disregard a waiver of the right to appeal and contest conviction if the defendant waived those rights both on paper and in open court. United States v. Nunez, 546 F.3d 450, 453 (7th Cir. 2008). "To establish ineffective assistance of counsel, a prisoner must show not only that the lawyer's work as a whole was objectively deficient but also that prejudice ensued." United States v. Nunez, 546 F.3d at 453 (citations omitted). The court in United States v. Nunez explained that "[a] lawyer who respects his client's formal waiver of appeal does not render objectively deficient service, and the waiver (coupled with the plea itself) shows that [defendant] did not suffer prejudice even if his lawyer should have filed a notice of appeal. Had an appeal been filed, it would have been dismissed in short order." Id. A lawyer "might have a responsibility to file an appeal if the client

9

indicated a desire to withdraw the plea, for that amounts to a declaration by the defendant of willingness to give up the plea's benefits, and withdrawal would abrogate the waiver too . . . ." Id. at 455.

Mr. Payne has offered nothing to suggest he told his attorney he wanted to withdraw his plea and wanted to appeal on that basis. Further, since Mr. Payne voluntarily and knowingly waived his right to appeal, any grounds for appeal would have been frivolous.

*United States v. Gladish is Distinguishable*

Even if Mr. Payne were within the one-year time limitation to file a § 2255 petition and hadn't waived his right to collaterally attack his conviction, the court still would find that Gladish is distinguishable and that Mr. Payne wasn't prejudiced by entering into a guilty plea.

The defendant in Gladish was convicted of violating 18 U.S.C. § 2422(b). United States v. Gladish, 536 F.3d 646, 647 (7th Cir. 2008). He was caught in a sting operation in which a government agent impersonated a 14-year old girl in an Internet chat room. Id. at 648. The defendant solicited "Abagail", whom he believed to be 14, to have sex with him. Id. She agreed to have sex with the defendant and in a subsequent chat, he discussed the possibility of traveling to meet her, but no arrangements were made. Id. The issue in Gladish was whether the defendant had taken a substantial step toward the completion of the crime as required for a conviction. Id. The court stated that "[t]he 'substantial step' toward

completion . . . has been usefully described as 'some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime.'" Id. at 648 (citation omitted). The defendant in Gladish was found not to have completed substantial steps toward the commission of the crime when he issued vague and unspecific talk or "hot air" about arranging a sexual encounter with a person whom he believed to be a minor. Id. at 650. The court found that "[h]is talk and his sending her a video of himself masturbating (the bases of his unchallenged conviction for violating 18 U.S.C. § 1470) are . . . consistent with his having intended to obtain sexual satisfaction vicariously." Id. at 650. The Gladish court clarified that "[t]reating speech (even obscene speech) as the 'substantial step' would abolish any requirement of a substantial step." Id.

Mr. Payne contends that all he did was talk to the undercover officer (whom he believed to be a minor), and since he never physically went to visit her, his conviction should be considered improper in light of the holding in Gladish. The Gladish court specifically stated: "Travel is not a sine qua non of finding a substantial step in a section 2422(b) case. The substantial step can be making arrangements for meeting the girl, as by agreeing on a time and place for the meeting." Id. at 649 (citations omitted). The evidence presented by the government establishes that Mr. Payne took such substantial steps. Mr. Payne (screen name lon3ly_05) engaged in the following conservation with the officer posing as a 15-year-old girl (screen name southbendblonde):

>     lon3ly_05 (6:10:02 PM): I would like to meet you
>     southbendblonde (6:21:05 PM): so fri is good?
>     lon3ly_05 (6:21:14 PM): yeah where do I meet you?
>     southbendblonde (6:21:42 PM): maybe at a restaurant close to my house
>         . . .
>     southbendblonde (6:50:01 PM): what time on Friday?
>     lon3ly_05 (6:50:05 PM): around noon
>     southbendblonde (6:50:15 PM): ok
>     lon3ly_05 (6:50:20 PM): I love you Jenna
>     ...
>     southbendblonde (6:50:22 PM): what will u be wearing?
>     lon3ly_05 (6:50:36 PM): brown shirt and black shorts
>     . . .
>     southbendblonde (6:51:11 PM): do u know where the kitchenette is?
>     lon3ly_05 (6:51:16 PM): yeah I do
>     . . .
>     lon3ly_05 (6:51:41 PM): would you want to make love together?
>     . . .
>     southbendblonde (6:53:58 PM): how will I know it is you?
>     . . .
>     lon3ly_05 (6:54:31 PM): because of what I will be wearing
>     southbendblonde (6:54:57 PM): a t shirt? tank top?
>     lon3ly_05 (6:55:02 PM): would you want to use protection or no protection?
>     lon3ly_05 (6:55:04 PM): tshirt

Mr. Payne established a date, time and location to meet, asked about engaging in sexual activity, and even inquired about using protection.

This case is similar to <u>United States v. Zawada</u>, 552 F.3d 531 (7th Cir. 2008), a case where the Seventh Circuit upheld a jury's conviction of the defendant under 18 U.S.C. 2422(b). In <u>Zawada</u>, the defendant and the person posing as a minor chatted several times, "had a relatively concrete conversation about making a 'date', . . . discussed a specific date and time of day that they thought would work[, the defendant] checked on the intimate detail of [the supposed minor's] birth control practices, and he asked her whether he should

bring some kind of protection with him." Id. at 535. The court found that even though no meeting ever occurred, "this is somewhat closer to a substantial step than the 'hot air' and nebulous comments about meeting 'sometime' that took place in Gladish." Id. The court couldn't say that evidence of the defendant's actions in Zawada was so wanting as to establish plain error. Id.

Despite Mr. Payne's contentions to the contrary, Gladish is different from his case. Mr. Payne, like the defendant in Zawada, took additional steps toward the commission of the crime by setting a date, time and location and inquiring about birth control. Mr. Payne therefore hasn't presented sufficient evidence to show that he was prejudiced by pleading guilty.

*Commerce Clause*

Mr. Payne's remaining argument is that 18 U.S.C. 2422(b) alters sensitive federal/state relationships and violates the Commerce Clause by transforming state offenses into federal felonies. Relying on Rewis v. United States, 401 U.S. 808 (1971), Mr. Payne contends that the court lacked jurisdiction in accepting his plea agreement and sentencing him. In Rewis, the petitioners challenged their convictions under the Travel Act, 18 U.S.C. § 1952, which prohibits interstate travel in furtherance of certain criminal activity. Id. at 809. The petitioners had been convicted of a violation of the Travel Act for running a gambling operation that out-of-state bettors frequented. Id. The court held that conducting a gambling operation frequented by out-of-state bettors, by itself, doesn't violate the Act. Id.

13

at 811. The court reasoned that applying the Travel Act so broadly "would alter sensitive federal-state relationships, could overextend federal police resources, and might well produce situations in which the geographic origin of customers . . . would transform relatively minor state offenses into federal felonies." Id. at 812. Because Mr. Payne wasn't charged under the Travel Act, the holding in Rewis v. United States is inapplicable.

Mr. Payne was convicted of violating section 2422(b), which prohibits the use of any facility or means of interstate commerce to knowingly persuade, entice, or coerce a minor to engage in unlawful sexual activity. The Commerce Clause provides Congress with authority to regulate "the use of the channels of interstate commerce." United States v. Lopez, 514 U.S. 549, 558-559 (1995). Congress may "protect the channels of interstate commerce from immoral or injurious uses, and may forbid or punish the use of the channels to promote dishonesty or the spread of evil or harm across state lines." United States v. Schaffner, 258 F.3d 675, 679-680 (7th Cir. 2001) (citations omitted).

Use of the Internet for carrying out criminal activity has been recognized to constitute the "use of a facility of interstate commerce" required to support federal jurisdiction. *See* United States v. Borchert, 2004 WL 2278551, at *3 (N.D. Ill. 2004) (finding that the activity prohibited by § 2422 is "clearly the type of immoral and harmful activity delineated in the first category in Lopez"). The Fifth Circuit in United States v. Barlow, 568 F.3d 215, 220 (5th Cir. 2009), explained that § 2422(b) doesn't require proof of travel across state lines. "Section 2422(b) requires

the *use of* 'any facility or means of interstate or foreign commerce,'" and "it is beyond debate that the Internet and email are facilities or means of interstate commerce." Id.

It is undisputed that Mr. Payne's conversation with southbendblonde was on the Internet. The interstate nexus requirements of the statute were therefore satisfied.

CONCLUSION

For the reasons stated above, the court DENIES Mr. Payne's motion to vacate, set aside, or correct sentence [Doc. No. 1 in Cause No. 3:09-CV-107 and Doc. No. 40 in Cause No. 3:06-CR-115). Mr. Payne's request to proceed *In Forma Pauperis* is DENIED as moot [Doc. No. 2 in Cause No. 3:09-CV-107 and Doc. No. 41 in Cause No. 3:06-CR-115).

SO ORDERED.

Entered:  August 13, 2009 

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc: J. Payne
P. Skodinski
L. Miller Lowery